

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

EDP:ADW  *271 Cadman Plaza East*
F. # 2021R00452 / OCDETF #NY-NYE-839Z  *Brooklyn, New York 11201*

January 19, 2023

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. German Caraballo
                Criminal Docket No. 22-112 (FB)

Dear Judge Block:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for January 27, 2023. For the reasons set forth below, the government submits that a Guidelines sentence of 60 months in prison and five years of supervised release is reasonable and appropriate in this case.

I.    Facts

    A.  The Instant Offense of Conviction

      On August 31, 2021 law enforcement arrested Ivan Nicio-Lorenzo in Perth Amboy New Jersey, for conspiring to distribute narcotics. See Presentence Investigation Report, dated November 14, 2022 ("PSR") ¶ 5. At the time of his arrest, Nicio-Lorenzo possessed a bag containing approximately 1,850 grams of fentanyl. Id. On September 3, 2021, law enforcement interviewed Individual One, who was suspected of conspiring with Nicio-Lorenzo to distribute the narcotics. Id. ¶ 6. Individual One admitted to being aware of Nicio-Lorenzo's arrest and providing Nicio-Lorenzo with some of the fentanyl. Id.

      On September 11, 2021, Individual One informed law enforcement that Cesar Miron-Romero was engaged in narcotics trafficking and had asked Individual One to find someone

who could purchase kilograms of fentanyl in the New York area.[1]  Id. ¶ 7.  Miron-Romero later arranged to sell several kilograms of fentanyl to an associate of Individual One, who was, in fact, an undercover law enforcement agent.  Id. ¶ 8.  The agreement called for Individual One to pay $38,000 per kilogram.  Id. ¶ 9.  Miron-Romero informed Individual One that he could sell up to three kilograms of fentanyl, with two kilograms to be paid for in full and the third kilogram to be sold on consignment.  Id.  After Individual One provided Miron-Romero with a phone number for the undercover agent, the undercover agent and Miron-Romero communicated separately regarding the planned transaction.  Id.  The meeting was scheduled to take place on September 22, 2021, and Miron-Romero tasked the defendant with delivering the drugs.  Id.

On September 22, 2021, the defendant drove to Miron-Romero's residence and received from Miron-Romero a bag containing fentanyl.  Id. ¶ 10.  After Miron-Romero and the undercover agent agreed on the details of the meeting, Miron-Romero instructed the defendant to make the delivery at 2:00PM at a highway rest area near Perth Amboy, New Jersey.  Id.  Miron-Romero told the defendant that he should deliver the package in return for $75,000.  Id.  While the defendant did not have an express agreement with Miron-Romero regarding what he would be paid for performing this task, he expected to receive anywhere between $500 and $3,000.  Id.  The defendant was aware that the package contained narcotics, though he did not know the exact type.  Id.  When the defendant met the undercover agent at the agreed-upon time and place, law enforcement arrested him.  Id. ¶ 11.  Law enforcement found inside of the defendant's vehicle approximately two kilograms of fentanyl.  Id.

Upon his arrest, the defendant waived his Miranda rights and spoke to law enforcement, admitting his role in the narcotics conspiracy.  Id. ¶ 13.  The defendant also subsequently met with the government voluntarily and gave a more detailed accounting of his conduct and the conduct of others in an attempt to obtain a cooperation agreement.  During that meeting, the defendant admitted that he had previously engaged in narcotics conduct with Miron-Romero a few times in the past.  While the government ultimately declined to offer a cooperation agreement, it assesses that the defendant was generally credible during the meeting and satisfied the requirements of 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2(a)(5).

B. The Defendant's Revised Guilty Plea

On March 25, 2022, pursuant to a plea agreement, the defendant waived indictment and pleaded guilty before the Honorable James R. Cho to Count One of an information, charging the defendant with conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vi).  PSR ¶ 1.

Pursuant to Federal Rule of Criminal Procedure 11(d), and with no objection by the government, the defendant now seeks to withdraw his original guilty plea.  See Fed. R. Crim. P.

---

[1] Ivan Nicio-Lorenzo and Cesar Miron-Romero were charged with narcotics trafficking in Case No. 21-CR-470, which is currently pending before the Honorable Rachel P. Kovner.  The case against Nicio-Lorenzo is currently pending trial.  Miron-Romero pleaded guilty to one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), on September 15, 2022.  Sentencing of Miron-Romero is currently pending.

11(d) ("A defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason"). The parties respectfully request that during the January 27, 2023 sentencing hearing, the defendant first be allowed to withdraw his March 25, 2022 plea, plead guilty pursuant to a revised plea agreement, and then proceed immediately to sentencing. Per the parties' revised plea agreement, the defendant will plead guilty to a lesser-included offense within Count One of the information, charging a violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The terms of the revised plea agreement are substantively identical to those of the original plea agreement, other than the fact that the defendant will plead guilty to a lesser-included Section 841(b)(1)(C) offense instead of the original Section 841(b)(1)(A)(vi) offense in Count One of the information. The United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") calculation set forth in both the March 25, 2022 plea agreement and the revised plea agreement remains the same.

    C. <u>The Defendant's Criminal History</u>

The defendant has numerous previous criminal convictions. On May 26, 1999, the defendant was sentenced in New Jersey state court for a misdemeanor conviction for an offense relating to a forged or altered writing made to the authorities. See PSR ¶ 31. Official records do not show what sentence was imposed in that case. Id.

On September 19, 2003, the defendant was sentenced to three years in prison, six months' suspension of his driver's license and a fine by a New Jersey state court based on a felony conviction for possession of a controlled dangerous substance or analog. Id. ¶ 33. On the same day, the defendant was sentenced to a concurrent three-year prison sentence in New Jersey state court based on a separate felony conviction for manufacturing, distributing, or dispensing a controlled dangerous substance or analog. Id.

On January 12, 2007, the defendant was sentenced to 90 days in prison, two years of probation, six months' suspension of his driver's license and a fine by a New Jersey state court based on a misdemeanor conviction for possession of 50 grams or less of marijuana. Id. ¶ 34.

On October 1, 2007, the defendant was sentenced in New Jersey state court based on a felony conviction for participating in a riot. Id. ¶ 35. To date, Probation has not received records reflecting the sentence imposed in this case.

On June 28, 2013, the defendant was sentenced to 364 days in prison and two years of probation by a New Jersey state court based on felony convictions for possession of a controlled substance or analog and abuse, abandonment, cruelty and neglect of a child. Id. ¶ 36.

On December 12, 2014, the defendant was sentenced to two years of probation, 50 hours of community service, six months' suspension of his driver's license and a fine by a New Jersey state court based on a misdemeanor conviction for possession of 50 grams or less of marijuana. Id. ¶ 37.

On April 8, 2016, the defendant was sentenced to 177 days in prison, five years of probation, mandatory drug court, six months' suspension of his driver's license and a fine by a

New Jersey state court based on a felony conviction for distribution of a controlled dangerous substance or analog within 1,000 feet of school property. Id. ¶ 38.

On September 15, 2016, the defendant was sentenced time served (after spending nine days in jail) and a fine by a New Jersey state court based on a misdemeanor conviction for loitering to obtain or distribute a controlled dangerous substance. Id. ¶ 39.

II.  Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR. PSR ¶¶ 20-25. The government also submits that an additional two-level reduction in the total offense level is appropriate in this case, pursuant to U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2(a)(5), notwithstanding the fact that the defendant falls into Criminal History Category III. See id. ¶ 99. This results in a total offense level of 23. Based on a total offense level of 23 and a Criminal History Category of III, the Guidelines recommend a sentence of 57 to 71 months in custody. As described earlier, this Guidelines calculation remains the same under the parties' anticipated revised plea agreement.

III.  Argument

The government respectfully submits that a Guidelines sentence of 60 months in prison and five years of supervised release would be sufficient but no more than necessary to satisfy the purposes of 18 U.S.C. § 3553(a)(2).

A. The Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B. Nature and Circumstances of the Offense

The government respectfully submits that a Guidelines sentence of 60 months in prison and five years of supervised release would appropriately "reflect the seriousness of the offense" and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will also provide appropriate punishment for the "nature and circumstances of the offense." See id. § 3553(a)(1).

The nature and circumstances of the defendant's offense are very serious. See 18 U.S.C. § 3553(a)(1). The defendant knowingly participated in a conspiracy to distribute a large amount of fentanyl—an extraordinarily dangerous narcotic that is the primary driver of the ongoing opioids epidemic and resulting overdose deaths. According to the Centers for Disease Control and Prevention, overdose deaths involving opioids increased from an estimated 70,029 in 2020 to 80,816 in 2021—an increase of 15% in just one year.[2] Of those 80,816 estimated overdose deaths in 2021, 71,238 of them were caused by fentanyl and other synthetic opioids. In addition, the amount of fentanyl involved in the conspiracy was approximately 2 kilograms. That is enough fentanyl to kill as many as 1,000,000 people, as even just 2 milligrams of fentanyl can constitute a lethal dose.[3] These are staggering numbers. The willing participation of people such as the

---

[2] See "U.S. Overdose Deaths In 2021 Increased Half as Much as in 2020 – But Are Still Up 15%," Centers for Disease Control and Prevention, available at: https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2022/202205.htm

[3] See "Facts About Fentanyl," Drug Enforcement Administration, available at: https://www.dea.gov/resources/facts-about-fentanyl

defendant is what allows the fentanyl trade to flourish and continue inflicting untold amounts of suffering and harm in this country. As such, the defendant merits serious punishment.[4] Accordingly, a Guidelines sentence of 60 months in prison and five years of supervised release would reflect the seriousness of the offense and provide just punishment.

### C. History and Characteristics of the Defendant

The government respectfully submits that the defendant's history and characteristics justify a Guidelines sentence of 60 months in prison. See 18 U.S.C. § 3553(a)(1). First and foremost, the defendant committed the instant offense after a long history of similar drug offenses. Indeed, the defendant incurred nine separate criminal convictions since 1999. Most of those convictions were for drug-related conduct, including four felony drug convictions. Over that span of time, the defendant served multiple prison sentences, including two concurrent three-year prison sentences imposed in September 2003 for two separate drug felonies. Yet despite receiving numerous second chances to live a law-abiding life, the defendant decided to once again deal illegal drugs for the promise of easy money. Indeed, the conduct underlying the defendant's arrest was not the first time he had worked on behalf of Miron-Romero. Previous to the defendant's arrest, he was present with Miron-Romero during at least one other narcotics exchange, sent photos and videos of drugs and money to Miron-Romero, and delivered drug proceeds to Miron-Romero. See PSR ¶ 12. Thus, while the defendant's conduct in concert with Miron-Romero lasted only for about one or two months, it is clear that he was a fully knowing and voluntary member of the conspiracy. This pattern of recidivism, culminating in a conspiracy involving an incredibly lethal narcotic, calls for a serious sentence.

Second, the defendant appears to have supportive family members, and he committed the instant offense amidst difficult personal circumstances, including parents in poor health and a fire that burned down the defendant's residence. Id. ¶¶ 50-56. These facts call for a modest amount of lenience, though they do not significantly mitigate the circumstances of the offense.

Taken together, the defendant's history and characteristics support a Guidelines sentence of 60 months in prison.

### D. Respect for the Law and the Need for Deterrence

With respect to the other Section 3553 factors, a Guidelines sentence of 60 months in prison and five years of supervised release will also promote respect for the law and provide adequate deterrence to others contemplating similar acts. See 18 U.S.C. § 3553(a)(2). The defendant's narcotics offense was serious and deserves serious punishment. In addition, a significant carceral sentence will make clear that the country's drug laws will be enforced

---

[4] While the defendant was a minor participant in the scheme, this fact is not a basis for a further downward variance because it is reflected in the Guidelines calculation already. Likewise, while the defendant admitted his role in the scheme early on and voluntarily provided information to the government, those facts are also already reflected in the Guidelines calculation through the adjustments for acceptance of responsibility and the government's safety-valve recommendation.

vigorously, and that conspiring to distribute drugs will result in serious consequences, especially where the scheme involves fentanyl.

Furthermore, a sentence of 60 months in prison would specifically deter the defendant and generally deter similarly situated individuals from committing similar crimes. Fentanyl is a deadly drug that can be easily transported and that carries a lucrative street value, even in small amounts. Many individuals, such as the defendant, unfortunately succumb to the temptation of dealing fentanyl in return for quick financial gain. Indeed, in this case, the defendant's conduct represents an escalation of his years-long pattern of drug-dealing. Given that the defendant's previous prison sentences, each lasting no more than a few years, have not deterred the defendant from repeating such conduct, a more significant sentence is appropriate here. The government respectfully submits that a significant sentence of 60 months in prison would specifically deter the defendant from engaging in similar conduct in the future and send a message to other would-be fentanyl traffickers that such crimes can result in significant prison sentences.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, see 18 U.SC. § 3553(a)(2), which, in this case, is a Guidelines sentence of 60 months in prison and five years of supervised release.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Andrew Wang
Andrew Wang
Assistant U.S. Attorney
718-254-6311

cc: Clerk of the Court (FB) (by ECF)
Mark Cohen, Esq. (by e-mail)
United States Probation Officer (by e-mail)